# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| United States of America, | Case No. 2:19-cr-00271-RFB-VCF |
|---|---|
| Plaintiff, | |
| v. | **ORDER** |
| David Cox, | |
| Defendant. | |

Before this Court is defendant David Cox's motion for temporary release under 18 U.S.C. § 3142(i). ECF No. 26. Mr. Cox requests temporary release on two different grounds. *Id.* First, he argues that COVID-19 constitutes a compelling reason under § 3142(i) given his age and conditions of confinement, and that the circumstances surrounding this pandemic impair his ability to prepare his defense. *Id.* Next, he argues that continued detention in these circumstances amounts to punishment and that pretrial punishment violates his due process rights under the Fifth Amendment. *Id.*

The government opposes the request. ECF No. 30. In addition to arguing that conditions cannot be fashioned to address the flight risk and danger to the community that Mr. Cox poses, the government argues COVID-19 does not constitute a compelling reason warranting temporary release and that the preparation of Mr. Cox's defense is still possible. *Id.* The government does not address Mr. Cox's constitutional argument. *Id.*

This Court will analyze each of these arguments in turn. But first, this Court recites some background information.

**I.    Background.**

Mr. Cox was charged with armed bank robbery and with possessing a firearm during and in relation to a crime of violence. ECF Nos. 1 and 14. He made his initial appearance on October 3, 2019. ECF No. 5. The government moved for detention on the basis that Mr. Cox was a flight risk and danger to the community. The defense did not argue for release and submitted to detention. This Court made note of the following in determining that no conditions could be fashioned to release Mr. Cox consistent with the Bail Reform Act:

> The defendant does not appear to have a stable residence and he was very recently released in Colorado after serving a very lengthy period of incarceration in connection with three different bank robberies. The allegation is that he was to reside at a halfway house and that he had absconded in July of 2019. The reason why the defendant appears before this Court at this time is not because he chose to self-surrender but because he has been apprehended and arrested in connection with yet another bank robbery. There is no verification whatsoever that the Court can rely on regarding any ties to any community and the defendant's criminal history is particularly lengthy and includes several parole and probation revocations.

ECF No. 11. This Court detained Mr. Cox as a flight risk and danger to the community and noted that this was a presumption case under 18 U.S.C. § 3142(e)(3).

Since the filing of the instant motion, this Court has once again reviewed the U.S. Pretrial Services Report prepared for the bail hearing. Mr. Cox had been homeless for the five months prior to his initial appearance. His family ties are not particularly strong. As far as his health, he reported his physical health was "good," although he is prescribed medication for diabetes. Starting in 2006, Mr. Cox pled guilty to committing two bank robberies, one in Nevada and one in New Mexico. Both cases were transferred to the district of Colorado (Case Nos. 1:06-cr-0395-REB and 07-cr-00140-REB), where he was sentenced to 168 months and a period of supervised release in each case. The sentences ran concurrent to each other. As Mr. Cox was transitioning

into supervised release on those two cases, he absconded from the half-way house. Soon after that, he was arrested for the alleged armed bank robbery which brought him before this Court.[1]

**II.      Analysis.**

      **a.  18 U.S.C. § 3142(i).**

Before this Court can turn to the analysis under 18 U.S.C. § 3142(i), it is essential to look at the overarching structure of the statute. The fundamental precept of the Bail Reform Act mandates the release of individuals so long as the court can be reasonably assured the defendant does not pose a flight risk or danger to the community. 18 U.S.C. § 3142. To the extent that conditions, or a combination of conditions, can be fashioned to reasonably provide such assurances, the individual must be released, as detention is "the carefully limited exception." *Id.*; *see also United States v. Salerno,* 481 U.S. 739, 755 (1987).

In assessing what conditions, if any, can be fashioned, judges are directed to take into account available information pertaining to the factors identified under 18 U.S.C. § 3142(g). Those factors include the nature and circumstances of the offense charged, including whether it involves controlled substances or firearms; the weight of the evidence against the defendant; the defendant's history and characteristics (including history relating to drug abuse, defendant's criminal history, and record of appearing at court proceedings); whether the detainee was on probation, parole, or other court supervision at the time of the allegedly offensive conduct; and the nature and seriousness of the danger to any person or the community posed by the defendant's release. 18 U.S.C. § 3142(g). Ultimately, the information provided in each case aids in the individualized assessment that will result in the release or the detention of the person.

If no conditions can be fashioned and the court orders a person detained, 18 U.S.C. § 3142(i) provides an independent mechanism for the temporary release of the person. One of two conditions must be met before the judge may order temporary release: such release must be

---

[1] In light of the underlying motion, this Court received a subsequent report from U.S. Pretrial Services, which continues to recommend that Mr. Cox be detained.

necessary for preparation of the person's defense or there must exist another compelling reason. 18 U.S.C. § 3142(i).

There have been few written orders that analyze § 3142(i), and fewer still that discuss it vis-à-vis the COVID-19 pandemic. Importantly for purposes of this analysis, the motion here does not seek to reopen a detention hearing pursuant to § 3142(f). Thus, Mr. Cox does not need to show there is new information that has a material bearing on whether conditions can be fashioned that would reasonably assure his appearance and the community's safety. Instead, Mr. Cox must show that his temporary release is necessary for the preparation of his defense or advance another compelling reason.[2] He bears that burden. *United States v. Dupree*, 833 F. Supp. 2d 241, 246 (E.D.N.Y. 2011).

At any rate, it cannot be the case that requests for temporary release under § 3142(i) be analyzed in a vacuum. Despite the dearth of guidance in this regard, it appears that, in considering the propriety of temporary release, the court would need to balance the reasons advanced for such release against the risks that were previously identified and resulted in an order of detention. In turn, whether temporary release under § 3142(i) is proper requires the individualized analysis of the facts of each case.

### i. "Compelling reason."

Mr. Cox argues that the health risk posed to him by the current COVID-19 pandemic is a compelling reason to temporarily release him. ECF No. 26 at 2. He notes that he is 60 years old and that the Centers for Disease Control (CDC) indicates people his age are at an increased risk of experiencing a severe illness because of COVID-19. *Id*. He also argues that the conditions of pretrial confinement create an ideal environment for the spread of contagious diseases such as COVID-19. *Id.* at 6.

---

[2] Tangentially, while it behooves Mr. Cox to propose a release plan, this Court does not believe § 3142(i) requires Mr. Cox to show that there is an appropriate person he would need to be released "*to*." This Court reads that portion of the statute to state that a judicial officer could release a person "*in* the custody of a United States marshal or another appropriate person[.]" 18 U.S.C. § 3142(i)(4). Were the half-way house a viable solution in this case, Mr. Cox would not need to show there is a third-party custodian who would take custody of him.

The government disagrees with Mr. Cox, arguing that no compelling reason exists for his temporary release. ECF No. 30 at 1. The government notes that the essence of Mr. Cox's argument is that he should be released because he may be infected with the Coronavirus and that such an infection could be severe because he is over 60 years old. *Id.* at 5-6. The government argues that contrary to Mr. Cox's assertion, he is not at a higher risk of severe illness from COVID-19. *Id.* at 6. While the CDC guidelines note that older adults are at higher risk for severe infections, the CDC defines "older adults" as being 65 years and older. *Id.* The government also points out that Mr. Cox does not argue that he has any underlying health conditions that put him at an increased risk for severe illness. *Id.* In fact, he reported to pretrial services that he was in "good" health. *Id.* Finally, the government notes that to the extent Mr. Cox is at an increased risk of contracting the Coronavirus while detained, so are all other detainees. *Id*. at 7. The government argues that if this increased risk is the compelling reason justifying release, then all detainees would need to be released. *Id.*

As stated previously, caselaw on this particular subsection of the Bail Reform Act is scarce. Courts have allowed for temporary release where, for example, a defendant was suffering from a terminal illness or serious injuries. *See, e.g.*, *United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993) (permitting release of defendant suffering from terminal AIDS that could no longer be managed by correctional authorities); *see also United States v. Cordero Caraballo*, 185 F. Supp. 2d 143 (D.P.R. 2002) (permitting release where defendant sustained "serious" and "grotesque" gunshot wounds, suffered a heart attack, underwent an emergency tracheotomy, was partially paralyzed, could not use his hands, and had open and infected wounds about his body, and where the United States Marshal's Service refused to take custody of him until his wounds closed); *United States v. Stephens*, — F. Supp. 3d —, 2020 WL 1295155 (S.D.N.Y. Mar. 19, 2020) (permitting release of defendant due to COVID-19 pandemic).

The rate at which COVID-19 is spreading and affecting communities around the world is alarming. Mitch Smith et al., *Coronavirus in the U.S.: Latest Map and Case Count*, N.Y. TIMES (Mar. 26, 2020), https://www.nytimes.com/interactive/2020/us/coronavirus-us-cases.html. Governor Steve Sisolak declared a State of Emergency in Nevada on March 12, 2020. Ken Ritter

& Michelle L. Price, *Virus Prompts Nev. Governor Emergency Order, Cancellations*, ASSOC. PRESS (Mar. 13, 2020), https://knpr.org/headline/2020-03/virus-prompts-nev-governor-emergency-order-cancellations. And Nevada's K-12 schools have been closed since March 16, 2020. Jackie Valley & Riley Snyder, *Sisolak Announces Statewide School Closures Until April to Reduce Coronavirus Spread*, NEV. INDEPENDENT (Mar. 15, 2020), https://thenevadaindependent.com/article/sisolak-announces-statewide-public-school-closures-until-april-to-reduce-coronavirus-spread. Most unprecedented—casinos have announced complete closure of their properties. Richard N. Velotta & Bailey Schulz, *Nevada Casinos Closing for 30 Days Following State Order*, LAS VEGAS REVIEW JOURNAL (Mar. 17, 2020), https://www.reviewjournal.com/business/casinos-gaming/nevada-casinos-closing-for-30-days-following-state-order-1984236/. On March 20, 2020, Nevada's governor issued an order closing all non-essential business to the public and pleading for individuals to stay in their homes. James DeHaven, *Sisolak Sharpens Shutdown Order: Most Businesses Must Close by Midnight Friday*, RENO GAZETTE JOURNAL (Mar. 20, 2020), https://www.rgj.com/story/news/politics/2020/03/20/nevada-governor-orders-most-businesses-closed-midnight/2888908001/.

This Court has also taken measures to protect the public, staff and litigants. *See* General Order 2020-02 and Temporary General Orders 2020-03 and 2020-04. There can be no doubt that the danger this virus poses is real—entire economies are collapsing as a way to contain the spread of this virus. DOJ also announced it may investigate and prosecute individuals who intentionally spread the virus, referred to as a "biological agent" and potentially implicating terrorism-related statutes. Jeff Mordock, *Terrorism Charges for Those Caught Intentionally Spreading Coronavirus: DOJ*, WASHINGTON TIMES (Mar. 25, 2020), https://www.washingtontimes.com/news/2020/mar/25/doj-memo-spread-coronavirus-intentionally-federal/.

While no cases have been reported at Southern Nevada Detention Center, located in Pahrump, Nevada, it is likely only a matter of time before that occurs. Joseph A. Bick, *Infection Control in Jails and Prisons*, 45 Clinic Infectious Diseases 1047, 1047 (Oct. 2007), http://doi.org/10.1086/521910 (noting that in jails "[t]he probability of transmission of potentially pathogenic organisms is increased by crowding, delays in medical evaluation and treatment,

rationed access to soap, water, and clean laundry, [and] insufficient infection-control expertise"); Martin Kaste, *Prison and Jails Worry About Becoming Coronavirus 'Incubators'*, N.P.R. (Mar. 13, 2020), https://www.npr.org/2020/03/13/815002735/prisons-and-jails-worry-about-becoming-coronavirus-incubators. In fact, since the filing of Mr. Cox's motion, an employee at High Desert State Prison, north of Las Vegas, tested positive for COVID-19. Carolyn Williams, *Nevada Department of Corrections Reports First COVID 19 Case*, 8 NEWS NOW (Mar. 26, 2020), https://www.8newsnow.com/news/local-news/nevada-department-of-corrections-reports-first-covid-19-case/.

The federal detention facility in Pahrump has protocols to mitigate transmission of the virus and to address when someone tests positive, but the shortages Pahrump will face should hospitalization be required are no different than those around the country and the world. Given the medical obstacles identified by major cities, it is doubtful that Southern Nevada Detention Center and the hospital at Pahrump will fare better than hospitals in New York or California. *See* Brian M. Rosenthal et al., *Coronavirus in N.Y.: 'Deluge' of Cases Begins Hitting Hospitals*, N.Y. TIMES (Mar. 20, 2020), https://www.nytimes.com/2020/03/20/nyregion/ny-coronavirus-hospitals.html; Thomas Fuller et al., *As Coronavirus Cases Add Up, California Frantically Counts Tests, Beds and Masks*, N.Y. TIMES (Mar. 23, 2020), https://www.nytimes.com/2020/03/23/us/california-coronavirus-testing-masks.html.

All in all, the threat of COVID-19 is certainly a factor that could furnish grounds for someone's temporary release. But in determining whether a "compelling reason" is at play, the threat of COVID-19 must be balanced against other known information. To provide examples at both extremes of the spectrum, an individual citing "compelling reasons" based on the threat of COVID-19 who is charged with a non-violent offense and who was previously detained as a flight risk may fare better in this analysis than the individual charged with a violent offense who has been found to be both a danger to the community and a flight risk.

This Court has already identified the reasons why it has found Mr. Cox represents a danger to the community and a flight risk. Mr. Cox argues that his age, paired with the conditions at Nevada Southern Detention Center, place him at a higher risk for contracting the virus. As the

government points out, however, Mr. Cox is not within the CDC's category of higher-risk persons because he is less than 65 years old. But while Mr. Cox does not appear to be at a higher risk of contracting the virus based on his age, his diabetes does put him at a higher risk of severe illness if he were to become infected. AM. DIABETES ASSOC., *COVID-19 (Coronavirus)*, https://www.diabetes.org/coronavirus-covid-19 (last accessed Mar. 26, 2020). Yet, Mr. Cox would still pose a danger to the community if released, and his lack of community ties would make the only viable option the half-way house—where similar concerns identified to exist in a detention facility would be present.

This Court has balanced Mr. Cox' proffered reasons against the concerns previously identified at the detention hearing. Based on the totality of the circumstance here, and having conducted an individualized analysis, this Court does not find, at this time, that a "compelling reason" exists under § 3142(i) to merit Mr. Cox's temporary release. Mr. Cox is encouraged to have this Court revisit the issue should developments with respect to his medical condition require it.

### ii. "Necessary for the preparation of defense."

Mr. Cox next argues that his temporary release is necessary for the preparation of his defense. ECF No. 26 at 10. Mr. Cox's attorney states that it is unwise to visit him at Nevada Southern Detention Center during the COVID-19 pandemic because counsel may unknowingly expose Mr. Cox to the Coronavirus. *Id*. Counsel also states that if a quarantine is ordered, there are limited alternative means for contacting Mr. Cox at the jail. *Id.* Specifically, counsel argues there are only three or four video conferencing units and phone calls are recorded, which prevents Mr. Cox and counsel from speaking candidly. *Id.*

The government disagrees with Mr. Cox. ECF No. 30 at 3-5. The government argues that Mr. Cox has not shown that in-person visits with counsel are necessary or that his defense is otherwise being impeded at this time. *Id.* at 5. There is no indication, according to the government, that Mr. Cox cannot speak with his attorney via videoconference or telephone. *Id*. There is also no indication that if Mr. Cox is released, he will have more unfettered access to his

counsel. *Id.* For all these reasons, the government argues that Mr. Cox has not shown that temporary release is necessary for him to prepare his defense. *See id.*

Courts considering whether pretrial release is necessary for a person's defense under 18 U.S.C. § 3142(i) have considered: "(1) the time and opportunity the defendant has to prepare for the trial and participate in his defense, (2) the complexity of the case and volume of information, and (3) expense and inconvenience associated with preparing while incarcerated." *United States v. Cecrle*, No. 2:12-cr-400-JAD-GWF, 2014 WL 31674, at *4 (D. Nev. Jan. 3, 2014). This Court does not find that Mr. Cox's temporary release is necessary for the preparation of his defense, even considering the limitations currently placed on his ability to communicate with his counsel during the COVID-19 pandemic. First, this Court understands and is sympathetic to the considerations that may lead counsel to not visit Mr. Cox at Nevada Southern Detention Center. But to the extent these considerations exist while Mr. Cox is detained, they will also exist if he is released. In other words, it would be equally unwise to visit Mr. Cox outside of jail during the COVID-19 pandemic, as counsel could still unknowingly transmit the Coronavirus to him.

Second, if Mr. Cox is released, he will likely not have access to *any* videoconferencing. The pretrial services report noted that prior to being arrested, Mr. Cox was homeless. Counsel does not suggest that this would be any different if Mr. Cox was released or indicate where he would have access to videoconferencing. *See* ECF No. 26.

Third, with regard to telephone calls being recorded at Nevada Southern Detention Center, Mr. Cox has a right to have unmonitored calls with his counsel. 28 C.F.R. § 540.102 provides that "[s]taff may not monitor an inmate's properly placed call to an attorney. The Warden shall notify an inmate of the proper procedures to have an unmonitored telephone conversation with an attorney." This Court has looked into this matter and has been assured that Mr. Cox can acquire access to unmonitored calls. Should defense counsel learn of specific information indicating otherwise, a motion can be filed to address that issue.

Considering all these factors, this Court does not find at this time that Mr. Cox's temporary release is necessary to prepare his defense.

**b. Due Process Clause argument.**

Mr. Cox advances a second argument based on constitutional protections of pretrial detainees under the Due Process Clause of the Fifth Amendment. ECF No. 26. He argues that under the Fifth Amendment, pretrial detainees may not be punished. *Id.* He further argues that if the pretrial detainee's conditions of confinement are not reasonably related to a legitimate goal (i.e., if they are arbitrary or purposeless), then the court may infer that the purpose of the government action is punishment, which is prohibited. *Id.* Mr. Cox argues that the COVID-19 pandemic presents a significant risk of harm to him that outweighs the government's interest in confinement. *Id.* Mr. Cox also notes that pretrial detainees have a right to be free from deliberate indifference to their medical needs. *Id.* at 12.

The government opposes Mr. Cox's motion for temporary release but does not specifically address the Fifth Amendment argument. *See* ECF No. 30.

In evaluating whether a condition of pretrial detainment violates the Fifth Amendment, the question is whether the condition amounts to punishment. *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). The United States Supreme Court has stated that

> if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal—if it is arbitrary or purposeless—a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees *qua* detainees.

*Id.* at 539; *see also Demery v. Arpaio*, 378 F.3d 1020, 1028 (9th Cir. 2004) (applying same rule). Thus, the question before this Court is whether detaining Mr. Cox is reasonably related to a legitimate government objective.

This Court finds that Mr. Cox's detention is reasonably related to legitimate government interests, namely, protecting the community and ensuring his appearance at trial. At Mr. Cox's initial appearance, this Court detained him, finding that he posed a danger to the community and a flight risk. *See* ECF No. 11 at 2. Mr. Cox does not argue that any of these factors have changed. *See* ECF No. 26. Accordingly, this Court finds that Mr. Cox's detention is still reasonably related

to the legitimate government interests of protecting the community and ensuring his appearance at trial.

The recent COVID-19 pandemic does not change the analysis for Mr. Cox under the Fifth Amendment's Due Process Clause. Mr. Cox's argument, that the COVID-19 pandemic presents a significant risk of harm to him that outweighs the government's interest in confinement, improperly suggests that a balancing test applies. *See* ECF No. 26 at 11. As previously discussed, the Fifth Amendment's Due Process Clause simply asks whether the pretrial condition is reasonably related to a legitimate government interest. *Bell*, 441 U.S. at 539. Here, it is.

Finally, Mr. Cox notes that pretrial detainees have a right to be free from deliberate indifference to their medical needs. ECF No. 26 at 12. Mr. Cox does not provide much analysis on this point or explain how this right justifies his release in this case. *See id.* In addition, counsel provided no information as to how the detention facility is being indifferent to Mr. Cox or what his current medical needs are. Accordingly, this Court will not grant him temporary release on that basis.

### III. Conclusion.

This Court recognizes and sympathizes with the concerns raised by Mr. Cox and his counsel. Yet, this Court has to balance several competing interests. For the reasons stated above, at this time,

IT IS HEREBY ORDERED that Mr. Cox's motion for temporary release (ECF No. 26) is DENIED.

DATED: March 26, 2020.

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE